IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL SALAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>PARAMOUNT GLOBAL, d/b/a 247SPORTS<br><br>Defendant. | Case No. 3:22-cv-00756<br><br>Judge Eli J. Richardson<br><br>Magistrate Judge Alistair E. Newbern |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT PARAMOUNT GLOBAL'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# INTRODUCTION

Plaintiff's Opposition is riddled with errors and fails to resurrect his deficient claim.[1] Plaintiff mischaracterizes the law and the content of Paramount's brief to suggest many issues have been decided in this jurisdiction when they in fact have not. To the contrary, Plaintiff fails to state a claim under the VPPA because: (a) 247Sports.com is not a video tape service provider as it is a sports news and journalism provider; (b) Plaintiff fails to allege he watched pre-recorded videos; (c) Plaintiff's alleged receipt of the Newsletter does not make him a subscriber to a video tape service provider under the VPPA; (d) the Newsletter is not properly considered a good or service under the VPPA; (e) Plaintiff has failed to plausibly allege that Paramount disclosed his Facebook ID, and therefore his PII; and (f) Plaintiff does not plausibly allege that Paramount disclosed his PII knowingly. Plaintiff's Opposition also fails to establish he has Article III standing: he alleges no tangible injury and fails to allege any intangible injury relating to a right with "a close historical or common-law analogue." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

# ARGUMENT

## I. Plaintiff Fails to State a Claim to Relief Under the VPPA.

### A. 247Sports.com Is Not a Video Tape Service Provider.

As Plaintiff notes, the VPPA's video tape service provider definition "is not unbounded," and "not all who deliver videos are in the business of doing so." Opp. at 4, n.5. While Plaintiff claims certain out-of-jurisdiction cases "extinguish" the argument that the VPPA does not apply

---

[1] Plaintiff is even wrong about who owns 247Sports.com, as it is CBS Interactive Inc. ("CBSi"), not Paramount, and there is no such entity as "Paramount Global d/b/a 247Sports." *See* ICANN Registry, https://lookup.icann.org/en/lookup (listing CBSi as 247Sports.com's registrant). The court may take judicial notice of the ICANN website. *See Padilla v. Cmty. Health Sys., Inc.*, No. 3:19-CV-00461, 2022 WL 3452318, at *3 n.10 (M.D. Tenn. Aug. 17, 2022).

to news providers (*id.*), the U.S. government recently recognized the VPPA "does not apply to news organizations." United States of America's Memorandum in Support of the Constitutionality of the VPPA at 11, *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.), ECF No. 49-1.[2] This makes perfect sense since many news websites contain video. As a news provider focused on "team-specific [college] sports news," 247Sports.com should not be considered a video tape service provider. *About 247Sports*, 247Sports.com, https://247sports.com/Article/About-247Sports-116092/.[3]

Furthermore, Plaintiff's suggestion that the rule of lenity cannot apply because there is "no ambiguity in the VPPA provisions at issue" is incorrect given ongoing disagreement about whether the statute covers news organizations. Opp. at 5. In addition, in invoking *Sterk v. Redbox Automated Retail, LLC*, Plaintiff fails to mention *Sterk* assessed only whether the VPPA provided a private right of action in the context of the statute's record retention provisions—a different part of the VPPA from that at issue here. 806 F. Supp. 2d 1059, 1069-71 (N.D. Ill. 2011), *rev'd*, 672 F.3d 535, 538-39 (7th Cir. 2012) (disagreeing with the district court's statutory interpretation). Plaintiff cannot avoid that where, as here, "a criminal statute" has "criminal and noncriminal applications," the court must apply the rule of lenity to "interpret the statute consistently," whether it "encounter[s] its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). Applying the VPPA here would violate the rule of lenity, given Plaintiff's facts are "far removed from those that motivated [the statute's] passage." *Id.*; *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284 (3d Cir. 2016).

---

[2] "[F]ederal courts 'may properly take judicial notice of court filings . . . .'" *Smith v. Parker*, No. 3:19-CV-01138, 2020 WL 1853593, at *9 (M.D. Tenn. Apr. 13, 2020) (citations omitted).
[3] The Court may consider all of 247Sports.com because it is referenced in and integral to the Complaint. *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

### B. Plaintiff Fails to Allege He Watched Pre-Recorded Videos from a Video Tape Service Provider.

Despite Plaintiff's suggestion that 247Sports.com is a video tape service provider because it provides "audio visual materials" that are "similar" to prerecorded "videotapes" (Opp. at 5), every court to consider the issue has found "a video must be prerecorded to fall within the VPPA's definition of 'similar audio visual materials.'" *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2022 WL 7652166, at *6 (N.D. Cal. Oct. 13, 2022); *Louth v. NFL Enters. LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) ("live content" should not be included as a "similar audio visual material" under the VPPA). Plaintiff never alleges the videos he watched were prerecorded (as opposed to live-streamed).[4] Accordingly, he has not alleged 247Sports.com provided "similar audio visual materials" to him as required to establish that 247Sports.com is a video tape service provider, and his claim should be dismissed. 18 U.S.C. § 2710(a)(4); *Patreon*, 2022 WL 7652166, at *4-6 (failure to specify whether videos watched were "broadcast live or prerecorded" required dismissal of VPPA claim).

### C. Plaintiff Has Not Plausibly Alleged He Is a Subscriber Under the VPPA.

Despite Plaintiff's arguments to the contrary, he still has not demonstrated his alleged "subscription" to the 247Sports.com Newsletter establishes an "ongoing commitment or relationship" that makes him a "subscriber" within the meaning of the VPPA. *See, e.g., Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017). Plaintiff acknowledges, but misses the significance of a key fact that distinguishes his case from *Lebakken v. WebMD, LLC*: The *Lebakken* plaintiff alleged that she "created her own WebMD account," where Plaintiff here

---

[4] 247Sports.com offers live-streamed video content. *See, e.g.,* Jamie Oakes, *LIVE stream: Implosion of UVA's UHall*, 247Sports, https://247sports.com/Article/Virginia-Cavaliers-Basketball-LIVE-stream-Implosion-of-UVA-UHall-University-Hall-House-that-Ralph-Sampson-built-demolition-132312764/.

3

at most alleges that he entered his email to receive the Newsletter. Opp. at 6 n.10.

Indeed, Plaintiff is not, as he claims, "positioned identically to the *WebMD* plaintiff." Opp. at 7. Rather, he is positioned identically to the *Austin-Spearman* plaintiff, who at most suggested that she had signed up to receive a *Walking Dead* e-mail newsletter, not that she had created any kind of account with AMC. *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 670, 671 (S.D.N.Y. 2015). The Court here should therefore view Plaintiff's claim with the same skepticism the court employed to evaluate Austin-Spearman's claim. *See id.* (plaintiff's proposed amendment raised "troubling questions and implications," including "whether a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos."). Indeed, Plaintiff does not even allege that the Facebook Pixel is embedded in the Newsletter and there is thus no nexus between his purported subscription and the alleged VPPA violations.

Plaintiff also ignores that the nature of the offering should be considered in assessing whether an individual is a "subscriber." *Shultz* is relevant because it rejected the argument that the VPPA could be violated "by identifying a person as having requested or obtained *any* service from a video tape service provider," as Plaintiff notes. Opp. at 7 (emphasis added). And Plaintiff ignores entirely aspects of the legislative history Paramount raised, including the department store example, which provides that "a department store that sells video tapes would be required to extend privacy protection to *only* those transactions involving the purchase of video tapes and *not* other products." S. REP. NO. 100-599, at 12 (emphasis added). The alleged transaction—whereby Plaintiff alleges he entered his email address to receive the written Newsletter (Compl. ¶ 46), but does not have an account and cannot log in to the website—is not a transaction for video materials, and should not be deemed to fall within the VPPA's ambit.

4

Case 3:22-cv-00756    Document 26    Filed 02/07/23    Page 5 of 15 PageID #: 176

### D. The Newsletter Is Not a "Good or Service" Under the VPPA.

Plaintiff also never addresses Paramount's point that the Newsletter is not properly considered a "good or service" under the VPPA, at most claiming that the *WebMD* decision addressed this question. Opp. at 6. The *WebMD* court, however, had no reason to grapple with Paramount's arguments that the Newsletter (a) is not properly considered a good or service under the VPPA because it is not tangible chattel or labor, and (b) could be construed as an advertisement, because the defendant in *WebMD* did not make these arguments. *Compare* MTD at 14-15 *with* Defendant's Motion to Dismiss the Amended Complaint, *Lebakken v. WebMD, LLC*, No. 1:22-cv-006644 (N.D. Ga.), ECF No. 29. Instead, Plaintiff sidesteps these questions and does not explain why the Newsletter should not be characterized as an advertisement, a term which is defined in the context of another federal statute so as to distinguish it from goods and services. MTD at 15, n.13; 47 C.F.R. § 64.1200(f)(1) (defining an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services.").

### E. Plaintiff Has Not Plausibly Alleged that Paramount Disclosed PII.

The VPPA's definition of PII is narrow and specific. It includes information which identifies a person as having requested or obtained specific video materials. 18 U.S.C. § 2710(a)(3). Attempting to satisfy the definition's identifying component, Plaintiff points to the c_user cookie. But Plaintiff does not dispute, and therefore concedes, that the cookie is Facebook's, meaning that to the extent this cookie discloses any information, it is Facebook, not Paramount, that is doing the disclosing. This alone dooms Plaintiff's claim. Apparently recognizing this, Plaintiff focuses on whether his Facebook ID ("FID") is PII. Opp. at 8. But the Complaint itself alleges the FID is sent via Facebook's c_user cookie:

> cookie: sb=5HftYmuKvY9744LJOIj0fWM8; datr=T3_tYn4t9lhm5ShZA4tHvGlR; dpr=1.5; c_user=100003190670927; xs=40%3ADRvBU-LlwPna1g%3A2%3A16620
> 66646%3A-1%3A2997%3A%3AAcUXVo5HajbV6I-W5pNnYbgkr8jMtUd3c1OkGOn-rw; fr=0QOjNEJTF6Qgay0WC.AWVIvtIsg4G5ef3T0MiUGttl9qM.BjGOLV.U8.AAA.0.0.
> BjGOLV.AWVTHDN3h_Q

Compl. ¶ 40 (alleging the FID is shown in the "c_user field.").

Plaintiff's focus on the FID is even more perplexing given the FID shown in the Complaint is *not even his FID*. If one appends this FID to the Facebook website URL (*i.e.*, www.facebook.com/100003190670927) while logged into Facebook, it leads to the Facebook profile of a person named Jacob Brown, not Michael Salazar.[5] Moreover, while the Complaint indicates the FID is transmitted with the "name of the video" when an individual "clicks on and watches" a video (Compl. ¶ 40), Plaintiff never specifies what videos he watched. Indeed, he does not claim he watched the one video identified in the Complaint. *Id.* ¶ 39 (discussing a video in "an article title 'UCF LB Terrence Lewis, former 5-star recruit, plans to transfer.'"). Because Plaintiff never identifies what videos he watched, he has not plausibly alleged his FID was transmitted, or that information identifying him "as having requested or obtained specific video materials or services" (*i.e.*, PII), was disclosed. 18 U.S.C. § 2710(a)(3).

Plaintiff's reliance on the out-of-jurisdiction *Epoch Times* decision is unpersuasive because the court there failed to address the arguments Paramount raises here. The court concluded that "[b]y installing the Pixel, Defendant opened a digital door and invited Facebook to enter," but did not appropriately analyze the fact that the c_user cookie is Facebook's cookie and not a cookie placed or used by the defendant. *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022). The court also did not assess the arguments Paramount raises relating to Plaintiff's failure to point to his own FID

---

[5] Indeed, the screenshot in the Complaint appears to have been created by using the browser of a different person altogether.

and his failure to specify what videos he watched by title. *Id.* at *2-3.[6]

Moreover, Plaintiff's claim that the *Epoch Times* decision provides "a concise summary of the state of the law" and proves that the FID constitutes PII is belied by decisions that have suggested an FID may not be PII within the meaning of the VPPA. Opp. at 9; *Nickelodeon*, 827 F.3d at 283 (emphasis added) ("To an average person, an IP address or a *digital code in a cookie file* would likely be of little help in trying to identify an actual person"); *In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *11-12 (D.N.J. July 2, 2014) (declining to decide whether FIDs are PII under the VPPA and indicating disclosure must link a "person to a specific video choice" to support a VPPA claim). Indeed, courts in the Sixth Circuit have not yet decided whether an FID, or Facebook's cookie, constitute PII under the VPPA.

For these reasons, Plaintiff has failed to plausibly allege that Paramount disclosed PII.

**F. Plaintiff Has Not Plausibly Alleged Paramount "Knowingly" Disclosed PII.**

Plaintiff's failure to consider Paramount's argument that the c_user cookie is Facebook's leads him to ignore Paramount's core "knowingly" arguments. The case law is clear that if a recipient, as here, has to "reverse engineer" PII, then there can be no knowing disclosure under the VPPA. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182-83 (S.D.N.Y. 2015). *Disney* speaks directly to Plaintiff's allegations given he points to information allegedly disclosed "by a provider" (here, Paramount via the Pixel) "plus other pieces of information collected elsewhere by non-defendant third parties" (here, Facebook via its c_user cookie). *Id.* Indeed, because *Epoch Times* failed to appropriately consider that the cookie at issue is Facebook's, Plaintiff's reliance on that case for his knowingly analysis is misplaced. Opp. at 9-10. Because this cookie is Facebook's, Paramount could not have been disclosing the cookie, let alone doing so

---

[6] Plaintiff incorrectly asserts Paramount did not cite *Epoch Times* or *Boston Globe* in its moving brief. Opp. at 2, n.3. Paramount discussed both decisions in its brief. MTD at 15-16, nn. 14-15.

knowingly. *See also In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (no knowing disclosure where the FID was transmitted via the c_user cookie).

Plaintiff also casts the inquiry at issue as one into Paramount's knowledge of "what it installs on its website" and "how the Pixel operated." Opp. at 10. But allegations as to the Pixel's functionality do not suffice to plausibly allege Paramount knowingly disclosed PII under the VPPA, because Paramount's knowledge of the alleged disclosure is at issue, not how the Pixel works. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) (if a defendant "did not think it was conveying PII, then there could be no knowledge of the conveyance"), *adopted by*, No. 17-CV-4570 (LAK), 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017). Plaintiff now tries to close this gap by claiming Paramount's status as a "profit-generating enterprise[]" renders any suggestion that it lacked knowledge of the alleged disclosures implausible. Opp. at 10. But Hulu's status as a profit-generating enterprise did not prevent it from prevailing on the knowingly prong, and it should not prevent Paramount from prevailing here. *Hulu*, 86 F. Supp. 3d at 1105.[7]

## II. Plaintiff Lacks Article III Standing.

### A. Plaintiff Has Not Plausibly Alleged He Suffered an Injury-in-Fact.

Plaintiff never directly engages with Paramount's argument that he has failed to plausibly allege that he suffered an injury satisfying the Supreme Court's test for Article III standing articulated in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *TransUnion*, the Supreme Court held intangible harms may confer standing only where they have a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *Id.* at

---

[7] Plaintiff also does not address, and therefore concedes (a) that a party cannot disclose information that it does not know, and (b) that Plaintiff failed to allege that Paramount knew his FID, despite claiming that Paramount disclosed his FID. *Compare* MTD at 18 *with* Opp. at 9-10.

2200, 2204. Plaintiff, however, never explicitly analogizes his case to any tort recognized at common law, at most only citing cases applying the common law analogue test. Opp. at 13. Indeed, he essentially ignores this District's recent instruction that "[t]o establish standing" by alleging a "statutory violation[] caused [him] individualized concrete harm," a plaintiff "*must* show that the challenged action . . . 'resembles a harm traditionally regarded as providing a basis for a lawsuit.'" *Stewart v. Healthcare Revenue Recovery Grp., LLC*, No. 3:20-CV-00679, 2022 WL 200371, at *14 (M.D. Tenn. Jan. 21, 2022) (emphasis added).

Avoiding the common law analogue test leads Plaintiff to dismiss out-of-hand Paramount's directly on point cited authority. For example, in *Stewart*, this District found disclosure to a *third party vendor* of the plaintiff's name, address, status as a debtor, and the amount of her debt was not analogous to the "tort of invasion of privacy." *Id.* at *17. And in *Sputz*, the court similarly found plaintiff's alleged injury was not analogous to harms recognized at common law because he at most alleged another party "merely processed" his information. *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *4 (S.D.N.Y. Dec. 5, 2021); *see also Stewart*, 2022 WL 200371, at *16 (discussing *Sputz* favorably).

Indeed, instead of analogizing to a tort recognized at common law, Plaintiff summarizes cases that do not control here, including decisions that cannot control because they "predate *TransUnion*." Opp. at 11; *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 n.2 (6th Cir. 2023). Cases that Plaintiff invokes which postdate *TransUnion* also do not support his position. For example, Plaintiff does not mention the *Al-Ahmed v. Twitter, Inc.* plaintiff was "a critic of the Kingdom of Saudi Arabia ('KSA') who ha[d] been granted asylum in the United States," or that his information was allegedly disclosed "to KSA government officials." No. 21-CV-08017-EMC, 2023 WL 27356, at *1 (N.D. Cal. Jan. 3, 2023). Indeed, Al-Ahmed alleged the KSA used

9

his information "to silence him by stripping him of his Saudi nationality, keeping him under surveillance, and attempting to kidnap and kill him[.]" *Id.* Plaintiff's facts are a far cry from Al-Ahmed's. And as Plaintiff notes, *Krassick* and *Pratt* assessed standing in the context of the Michigan Preservation of Personal Privacy Act, which differs from the VPPA in that it covers disclosures related to consumption of "written materials." M.C.L.A. § 445.1712; Opp. at 13-14.

Another one of Plaintiff's cited cases favors Paramount, not Plaintiff. As Plaintiff notes, the *Bohnak* court found disclosing private "information . . . without authorization . . . could plausibly be offensive to a reasonable person." Opp. at 13. But rather than argue the alleged disclosure here would offend a reasonable person, Plaintiff suggests Paramount seeks to add a pleading requirement to the VPPA that the alleged disclosure cause "embarrassment" or "harassment." *Id.* at 16. This misstates Paramount's point, which is that Plaintiff cannot analogize the alleged VPPA violation here to a common law tort because disclosure regarding what sports news he consumed would not be highly offensive to a reasonable person. MTD at 21. Indeed, *Bohnak* supports Paramount's position, given the court analogized a data breach to the public disclosure of private facts tort and considered whether the alleged disclosure "would be highly offensive to a reasonable person." *Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 29 (S.D.N.Y. 2022), *appeal filed*, No. 22-319 (2d Cir. Feb. 17, 2022). By failing to argue that the alleged disclosure here would be highly offensive, Plaintiff concedes the alleged disclosure would not be highly offensive, and that he lacks standing.

Lastly, Plaintiff's multiple page excursion into whether Paramount's Privacy Policy is an enforceable browsewrap agreement is yet another distraction from the relevant standing analysis. Opp. at 17-19. Indeed, Plaintiff's arguments just confirm what Paramount has argued already, *i.e.*, that Plaintiff's Complaint amounts to a claim that Paramount did not obtain his consent to

disclose his PII in a manner satisfying the VPPA's requirements. MTD at 22. Paramount invoked its Privacy Policy because alleged injuries based on "deprivation of information" alone, as here, have "no obvious analogue in the history of American courts" and so do not confer standing. *Shumway v. Neil Hosp., Inc.*, 570 F. Supp. 3d 585, 591 (W.D. Tenn. 2021), *appeal dismissed*, No. 21-6079, 2022 WL 1562073 (6th Cir. Mar. 29, 2022); *see also Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) ("[M]ere failure to provide certain information does not mirror an intentional intrusion into the private affairs of another.").[8]

### B. Plaintiff's Alleged Injury Is Not Fairly Traceable to the Challenged Conduct.

Plaintiff's response on traceability is also deficient for multiple reasons, starting with his failure to address two points that Paramount raised in its motion. First, Plaintiff does not dispute, and therefore concedes, that he could have adjusted his browser or device settings to prevent any placement of the c_user cookie in the first place. *Compare* MTD at 23 *with* Opp. at 20. Second, as explained previously, Plaintiff does not dispute, and therefore concedes, that the c_user cookie is Facebook's cookie, meaning that to the extent this cookie disclosed any information, it was Facebook and not Paramount who disclosed it. *Compare* MTD at 15-16, 23 *with* Opp. at 20.

In addition to making these concessions, Plaintiff's Opposition also mischaracterizes the content of the Facebook Cookies Policy that he cites to support his traceability analysis. Plaintiff claims the Cookies Policy demonstrates that Plaintiff could not have "avoided the Pixel's functionality" by simply logging out of Facebook, explaining that "[o]nce a Facebook user has logged in, the related cookies remain for between for between 90 and 365 days." Opp. at 20.

---

[8] Plaintiff suggests the Court should not consider the Privacy Policy given a change made to 247Sports.com after Paramount filed its motion. Opp. at 19. But as can be verified via the Wayback Machine, the Policy has been posted on the website and contained substantially similar terms during the relevant period, so Plaintiff cannot object to consideration of the Policy. *E.g.*, https://web.archive.org/web/20221219065349/https://www.viacomcbsprivacy.com/en/policy; *Padilla*, 2022 WL 3452318, at *3 n.10 (a court may take judicial notice of a website).

But the Cookies Policy does not state that the c_user cookie remains on individuals' browsers after they log out of Facebook as Plaintiff's Opposition misleadingly suggests. Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/printable. Indeed, this is because "[l]ogging out of Facebook clears the c_user cookie." *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *8 n.5 (N.D. Cal. June 17, 2014).

Plaintiff has no meaningful rebuttal to Paramount's point that his injury is self-inflicted given the cookie, if it was placed, was placed on his browser when he logged into Facebook. *See* Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/printable. Recognizing this, Plaintiff now claims that *because* Paramount installed the Pixel on 247Sports.com, his c_user cookie was transmitted to Facebook. Opp. at 20. But he did not allege this cookie was transmitted to Facebook because Paramount installed the Pixel, and "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:07-0979, 2008 WL 3163531, at *6 (M.D. Tenn. Aug. 4, 2008). Regardless, this improper attempt to amend does not change that Plaintiff's alleged injury is self-inflicted given that (a) the c_user cookie is placed when individuals log in to Facebook, and (b) users consent to placement of this cookie in their Facebook privacy settings.[9]

Plaintiff accordingly lacks standing, and his VPPA claim should be dismissed.

## CONCLUSION

Because Plaintiff fails to plausibly allege the elements of his VPPA claim and lacks standing, Paramount respectfully requests that the Court dismiss the Complaint in its entirety.

---

[9] The Cookies Policy, which Facebook users can access via Facebook's "Privacy Center," explains (a) that Facebook uses the c_user cookie, (b) that Facebook's cookies provide it with "information about your use of other websites," and (c) how users can prevent the placement of cookies. *See* Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/printable.

Dated: February 7, 2023

Respectfully submitted,

/s/ *David L. Yohai*
David L. Yohai (*pro hac vice*)
Blake J. Steinberg (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
blake.steinberg@weil.com

David R. Singh (*pro hac vice*)
Amy T. Le (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com
amy.le@weil.com

Robb S. Harvey (Tenn. BPR No. 011519)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 244-6380
robb.harvey@wallerlaw.com

*Counsel for Specially-Appearing Defendant Paramount Global, making a Limited Appearance*

## CERTIFICATE OF SERVICE

       I hereby certify that on February 7, 2023, a true and exact copy of the foregoing has been served via the Electronic Case Filing system of the United States District Court for the Middle District of Tennessee, which is expected to send email notification of such filing to all counsel who have made an appearance, including the following:

Brandon M. Wise
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
73 W. Monroe, 5th Floor
Chicago, IL 60604
Telephone: (310) 444-0734
Email: bwise@peifferwolf.com

Michael L. Murphy
BAILEY GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (312) 444-0734
Email: mmurphy@baileyglasser.com

Rachel Schaffer Lawson
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, TN 37219
Telephone: (615) 620-1715
Email: rlawson@dickinson-wright.com

      /s/ *David L. Yohai*
      David L. Yohai (*pro hac vice*)