# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
WILLIAM J. MARTIN, individually and on  :
behalf of all others similarly          :
situated,                               :          22cv4776 (DLC)
                                        :
                          Plaintiff,    :          OPINION AND ORDER
                                        :
              -v-                       :
                                        :
MEREDITH CORPORATION, MEREDITH          :
HOLDINGS CORPORATION,                   :
IAC/INTERACTIVECORP, DOTDASH MEDIA,     :
INC., and DOTDASH MEREDITH, INC.,       :
                                        :
                          Defendants.   :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff William J. Martin:
Eric. M. George
Carl A. Roth
Ryan Q. Keech
Stefan Bogdanovich
Ellis George Cipollone O'Brien Annaguey LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067

Brett D. Katz
Ellis George Cipollone O'Brien Annaguey LLP
Carnegie Hall Tower
152 West 57th Street
Suite 28S
New York, NY 10019

For defendants Meredith Corporation, Meredith Holdings
Corporation, IAC/InterActiveCorp, Dotdash Media, Inc., and
Dotdash Meredith, Inc.:
Tiana Demas
Cooley LLP
55 Hudson Yards, 43rd Floor
New York, NY 10001

```
David E. Mills
Alexander J. Kasner
Cooley LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004

Kyle C. Wong
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
```

DENISE COTE, District Judge:

William Martin brings this action against five corporations -- Dotdash Meredith, Inc. ("Dotdash Meredith"), Meredith Corporation, Meredith Holdings Corporation, IAC/InterActiveCorp, and Dotdash Media, Inc. -- alleging that the defendants unlawfully disclosed information about his video viewing history to Facebook.  The defendants have moved to dismiss the complaint in its entirety.  For the following reasons, the defendants' motion to dismiss is granted.

## Background

The following facts are taken from the complaint and materials incorporated by reference in the complaint.  For the purposes of this motion, the plaintiff's factual allegations are taken as true, and all reasonable inferences are drawn in the plaintiff's favor.

Dotdash Meredith is one of the world's largest online media companies.  It operates the popular news and media website

2

www.people.com ("People.com").  Most of the content pages on
People.com include a video, and some of them consist entirely of
videos.

When visitors access People.com, they have the option to
create an account on the site as a "Registered User."  Dotdash
Meredith does not obtain Registered Users' consent to share
their personally identifying information or their video viewing
behavior with others.  Nonetheless, Dotdash Meredith allegedly
sends certain information about them to Facebook.

Dotdash Meredith shares information with Facebook using
software called the "Facebook Pixel."  The Facebook Pixel allows
Facebook to match a website visitor to a particular Facebook
account.

To install the Facebook Pixel on a website, the website
operator starts by adding a publicly available base code created
by Facebook (the "Base Pixel") to their website.  The Base
Pixel, as a default, sends Facebook the name of the webpage
viewed by a website visitor, along with the visitor's "Facebook
ID."  The website operator can also customize the Base Pixel to
track specific events, such as a visitor clicking an "add to
cart" button, which enables the Facebook Pixel to send
additional data to Facebook related to the customized events.
Dotdash Meredith has installed the Facebook Pixel on People.com

3

but "has not created any specific events, such as 'add to cart' or 'checkout' for additional tracking."

Plaintiff William Martin is an "active subscriber"[1] of People.com who often watches videos on the website.  He filed this action on June 7, 2022, asserting a claim against Dotdash Meredith under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, as well as claims against all five defendants under California Civil Code § 1799.3; the California Online Privacy Protection Act ("OPPA"), Cal. Bus. & Prof. Code § 22575; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and New York General Business Law ("GBL") §§ 349 et seq.[2]  On August 17, the case was reassigned to this Court. On September 16, the defendants filed a motion to dismiss the complaint.  The motion was fully submitted on November 30.

---

[1] It is not clear from the complaint if an "active subscriber" is the same as a Registered User, but this Opinion assumes that Martin falls into the group of website visitors whose information is allegedly sent to Facebook.

[2] Jurisdiction is premised on 28 U.S.C. § 1331 because the plaintiff asserts a claim under a federal statute.  Jurisdiction is also proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  The complaint alleges that Martin is a citizen of California, and the defendants are citizens of Iowa, Delaware, and New York, so minimal diversity exists between the class members and the defendants.  Additionally, the proposed class includes "millions of people," and the combined claims of the class members allegedly exceed $5,000,000.

4

## Discussion

The defendants move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  For the following reasons, the motion to dismiss the complaint under Rule 12(b)(6) is granted.

I.   Rule 12(b)(1)

The defendants' Rule 12(b)(1) motion is addressed first. Defendants move to dismiss the complaint under Rule 12(b)(1) on the ground that plaintiff lacks standing.

The plaintiff's standing to sue the defendant is a "threshold question in every federal case." Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  To satisfy the standing requirements imposed by Article III of the Constitution, a plaintiff

> must have suffered an injury in fact, (2) there must
> be a causal connection between the injury and the
> conduct complained of, and (3) it must be likely, as
> opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

Vengalattore v. Cornell Univ., 36 F.4th 87, 112 (2d Cir. 2022) (citation omitted).  For the purposes of a motion to dismiss for lack of standing, "plaintiffs bear the burden of alleging facts that affirmatively and plausibly suggest that they have standing to sue." Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174,

5

184 (2d Cir. 2020) (citation omitted). "All allegations made in the complaint are accepted as true and construed in favor of the plaintiffs." Id.

The plaintiff has sufficiently alleged standing. Martin was allegedly harmed when his information was disclosed to a third party. This injury is fairly traceable to the defendants' conduct and would be likely to be redressed if the plaintiff prevailed.

The defendants argue that the plaintiff's alleged injury is not an injury in fact because the information disclosed to Facebook does not include information protected by the VPPA. But whether the precise disclosure is actionable under the VPPA is a question about the merits of Martin's claim, rather than his ability to bring his case in federal court. See, e.g., SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020). Martin's allegations that the defendants disclosed his private information to a third party without his consent are sufficient to confer standing. See, e.g., TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (noting that intangible harms including "disclosure of private information" can be sufficiently concrete to satisfy Article III).

6

II.  Rule 12(b)(6)

     The defendants' motion to dismiss the complaint under Rule

12(b)(6) for failure to state a claim is granted.  To survive a

motion to dismiss for failure to state a claim, the complaint

"must plead enough facts to state a claim to relief that is

plausible on its face."  Green v. Dep't of Educ. of N.Y., 16

F.4th 1070, 1076-77 (2d Cir. 2021) (citation omitted).  "A claim

has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."

Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019)

(citation omitted).

     "In determining if a claim is sufficiently plausible to

withstand dismissal," a court must generally "accept all factual

allegations as true" and "draw all reasonable inferences in

favor of the plaintiffs."  Melendez v. City of New York, 16

F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  "Although

factual allegations of a complaint are normally accepted as true

on a motion to dismiss," however, "that principle does not apply

to general allegations that are contradicted by more specific

allegations in the Complaint."  DPWN Holdings (USA), Inc. v.

United Air Lines, Inc., 747 F.3d 145, 151-52 (2d Cir. 2014)

(citation omitted).  Similarly, a court "must dismiss a claim if

7

a plaintiff pleads himself out of court by alleging facts which show that he has no claim." Soto v. Disney Severance Pay Plan, 26 F.4th 114, 120 (2d Cir. 2022) (citation omitted).

When deciding a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). Further, even when a document is not incorporated by reference, "the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (citation omitted).

A.   VPPA

The plaintiff's VPPA claim is dismissed. The VPPA states that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person" for relief. 18 U.S.C. § 2710(b)(1). The VPPA "creates a private right of action for plaintiffs to sue persons who disclose information about their video-watching habits." In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 278 (3d Cir. 2016). To state a claim under § 2710(b),

> a plaintiff must allege that (1) a defendant is a
> "video tape service provider," (2) the defendant

8

disclosed "personally identifiable information
concerning any consumer" to "any person," (3) the
disclosure was made knowingly, and (4) the disclosure
was not authorized

by another part of the statute.  <u>Mollett v. Netflix, Inc.</u>, 795

F.3d 1062, 1066 (9th Cir. 2015).

Certain key terms of a VPPA claim are defined in the

statute.  As relevant to the instant motion, "personally

identifiable information" is defined to include "information

which identifies a person as having requested or obtained

specific video materials or services from a video tape service

provider."  18 U.S.C. § 2710(a)(3).

The plaintiff's VPPA claim is dismissed because the

complaint itself shows that the defendants do not disclose

information showing that a person has "requested or obtained

specific video materials or services."  The basis for the

plaintiff's claim is People.com's use of the Facebook Pixel.  As

the complaint alleges, however, the version of the Facebook

Pixel used on People.com sends only the Facebook ID and the name

of the webpage that a user accessed.  The complaint acknowledges

that not all of People.com's content pages even include videos.

Thus, simply disclosing the name of a webpage and an associated

Facebook ID leaves off essential information for a VPPA claim,

including at least: (1) whether the webpage contains a video;

(2) if so, the name of the "specific video materials" on the

9

page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.  Indeed, from the information disclosed to Facebook by People.com, it would not even be clear if the person associated with the Facebook ID is a consumer of video media.

Even for those pages that do include videos, merely disclosing the name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage.  The complaint's own examples reveal the distinction.[3]  To illustrate how People.com uses the Facebook Pixel, the complaint relies on a People.com webpage entitled "Ryan Reynolds Hilariously Trolls Wife Blake Lively on Her Birthday."  The Facebook Pixel sends the name of that webpage to Facebook.  But the video on that page (which also includes an article) has an entirely different title, "Ryan Reynolds on How Blake Lively Has Made Him 'The Father of My Dreams.'"  In

---

[3] The webpages discussed here are appropriately considered at this stage because they are incorporated in and integral to the complaint.  The complaint includes a screenshot of one webpage and includes the URL of the other page.  Further, the complaint relies on one page as exemplifying People.com's content pages and relies on the other as ilustrating how Facebook Pixel sends information to Facebook.

10

another example cited in the complaint, a webpage entitled "Jimmy Fallon Teases Blake Shelton About Not Making the Guest List for Wedding to Gwen Stefani" includes a video called "Jimmy Confronts Blake Shelton About Not Getting a Wedding Invite | The Tonight Show." Thus, as the examples show, disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page.

Plaintiff's arguments on this issue are unpersuasive. Plaintiff primarily relies on generalized allegations saying that People.com "causes the identity of the viewer and the titles of the videos viewed to be shared with Facebook." But the remainder of the complaint reveals that the information disclosed does not actually include the title of a video viewed by a website visitor. In the plaintiff's own words, the defendants' allegedly "unlawful disclosure is made through tracking software called the Facebook Pixel." "Dotdash Meredith has retained the default settings [of the Facebook Pixel] and has not created any specific events" for tracking. "With these [default] settings, the Pixel will capture the name of the webpage a Registered User visits and send the name of the website along with the associated Facebook ID to Facebook."

11

(Emphases added.)  Thus, despite a handful of generalized allegations saying that People.com shares video titles with Facebook, the specific allegations reveal that People.com shares only webpage titles.  See DPWN Holdings (USA), Inc., 747 F.3d at 151-52 (noting that a court need not accept as true general allegations in a complaint "that are contradicted by more specific allegations" (citation omitted)).

    Plaintiff also argues that providing a URL associated with a video is sufficient to state a VPPA claim.  This argument fails.  A claim under the VPPA requires that the information disclosed identify a person "as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  Simply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services.  And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more.

    Because the complaint shows that People.com does not disclose information identifying website visitors as having requested or obtained specific videos, it is unnecessary to

12

reach other questions such as whether a Facebook ID "identifies a person" and whether People.com is a "video tape service provider."  The plaintiff's VPPA claim is dismissed.

B.   California Civil Code § 1799.3

Plaintiff's claim under California Civil Code § 1799.3 is dismissed.[4]  Section 1799.3 states in pertinent part:

> No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual.

Cal. Civ. Code § 1799.3(a).  "Section 1799.3(c) makes a person liable for civil penalties for any willful violation of section 1799.3(a)."  Mollett, 795 F.3d at 1067 (citation omitted); Cal. Civ. Code § 1799.3(c).  The language of § 1799.3 is similar to that of the VPPA, but notably narrower in certain respects.  As relevant here, § 1799.3 applies only to entities "providing video recording sales or rental services."  The term "sales or rental services" indicates that the statute applies only to entities providing video materials to customers in exchange for money.

---

[4] Although the plaintiff's sole federal claim has been dismissed, the Court retains jurisdiction over the remaining claims under CAFA.  Supra note 2.

The § 1799.3 claim is dismissed because there is no indication in the complaint that the defendants are engaged in the business of "sales" or "rental" of video materials.  On the contrary, the complaint acknowledges that the plaintiff "has never paid for a People.com subscription."

The plaintiff responds that the § 1799.3 claim should survive because defendants feature advertisements with the videos to generate a profit and, similarly, because the defendants receive value from visitors by showing them advertisements.  These arguments miss the mark.  Whether or not defendants receive a profit from advertisers or receive some sort of benefit by showing visitors advertisements does not bear on the relevant question, which is whether the defendants rent or sell videos to users.

C.   OPPA

Plaintiff's OPPA claim is dismissed.  The OPPA provides in relevant part:

> An operator of a commercial Web site or online service that collects personally identifiable information through the Internet about individual consumers residing in California who use or visit its commercial Web site or online service shall conspicuously post its privacy policy on its Web site . . . .  An operator shall be in violation of this subdivision only if the operator fails to post its policy within 30 days after being notified of noncompliance.

Cal. Bus. & Prof. Code § 22575(a) (emphasis added).

14

California courts have noted that "the OPPA itself does not provide for a private action or public prosecution for any violations of its provisions."  People ex rel. Harris v. Delta Air Lines, Inc., 202 Cal. Rptr. 3d 395, 399 (Cal. Ct. App. 2016); see also In re Yahoo! Inc. Customer Data Sec. Breach Litig., No. 16-MD-02752-LHK, 2017 WL 3727318, at *43 (N.D. Cal. Aug. 30, 2017).  The plaintiff argues, nonetheless, that the OPPA implies a private right of action.

At the outset, the plaintiff concedes that the OPPA does not provide an express private right of action and does not point to any authority in the statute's eighteen-year history recognizing an implied private right of action.  In any event, it is unnecessary to decide whether the statute creates an implied private right of action because the plaintiff does not plausibly plead a violation of the OPPA even assuming that such a right of action exists.  The plaintiff's claim is brought under § 22575, which is violated "only if the [website] operator fails to post its policy within 30 days after being notified of noncompliance."  There are no allegations in the complaint suggesting that any defendant was notified of its alleged noncompliance with this provision or failed to post a policy after being notified of noncompliance.  Thus, plaintiff has not

15

plausibly pled a violation of the OPPA, and the claim is dismissed.

    D.   UCL

    Plaintiff's UCL claim is dismissed.  The UCL prohibits "unfair competition," which is defined in relevant part as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  A private action under the UCL may be commenced only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Pursuant to this rule, a plaintiff must

> (1) establish a loss or deprivation of money or
> property sufficient to qualify as injury in fact,
> i.e., economic injury, and (2) show that that economic
> injury was the result of, i.e., caused by, the unfair
> business practice . . . that is the gravamen of the
> claim.

Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1048 (9th Cir. 2017) (citation omitted); Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310, 322 (2011).  This economic injury requirement is "more restrictive than federal injury in fact because it encompasses fewer kinds of injuries."  Van Patten, 847 F.3d at 1048 (citation omitted).

    Plaintiff does not have standing to bring a UCL claim because he does not allege an economic injury.  Plaintiff's injury consists solely of the alleged disclosure of private

16

information.  This is not "lost money or property," and
plaintiff presents no argument for why this injury is sufficient
to bring a claim under the UCL.  Accordingly, the UCL claim is
dismissed.

    E.   GBL

    Finally, the plaintiff's claim under the GBL is dismissed.
The GBL prohibits "[d]eceptive acts or practices in the conduct
of any business, trade, or commerce in the furnishing of any
service in this state."  N.Y. Gen. Bus. Law § 349(a).  A
plaintiff bringing a claim under the GBL must allege "(1) that
the defendant's deceptive acts were directed at consumers, (2)
the acts are misleading in a material way, and (3) the plaintiff
has been injured as a result."  Chufen Chen v. Dunkin' Brands,
Inc., 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted).  An
act is materially misleading if it is "likely to mislead a
reasonable consumer acting reasonably under the circumstances."
Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).

    The plaintiff does not plausibly plead a GBL claim.  The
relevant section of the complaint merely states, in a conclusory
manner, that the "acts and conduct of Defendants alleged above
and herein constitute deceptive acts or practices within the
meaning of New York law."  (Citation omitted.)  But the
plaintiff does not explain how any of the defendants engaged in

17

any materially misleading conduct through People.com's use of
the Facebook Pixel.

Attempting to dodge this issue, the plaintiff, in his
opposition to the motion to dismiss, recharacterizes
People.com's use of the Facebook Pixel as a "scheme" by the
defendants to transmit information to Facebook.  Merely labeling
the conduct a "scheme" in an opposition brief, however, does not
plead how the relevant actions were likely to mislead a consumer
acting reasonably under the circumstances, as required for a GBL
claim.  Accordingly, the claim is dismissed.

## Conclusion

The defendants' September 16 motion to dismiss is granted.
The Clerk of Court shall enter judgment for the defendants and
close the case.

Dated:     New York, New York
           February 17, 2023

                                        DENISE COTE
                              United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2023, a true and exact copy of the foregoing has been served via the Electronic Case Filing system of the United States District Court for the Middle District of Tennessee, which is expected to send email notification of such filing to all counsel who have made an appearance, including the following:

Brandon M. Wise
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
73 W. Monroe, 5th Floor
Chicago, IL 60604
Telephone: (310) 444-0734
Email: bwise@peifferwolf.com

Michael L. Murphy
BAILEY GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (312) 444-0734
Email: mmurphy@baileyglasser.com

Rachel Schaffer Lawson
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, TN 37219
Telephone: (615) 620-1715
Email: rlawson@dickinson-wright.com

/s/ *David L. Yohai*
David L. Yohai (*pro hac vice*)